MICHAEL F. BEIRNE AND CORINNE A. BEIRNE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1219–66. Filed May 8, 1969.

*Robert C. Lowe*, for the petitioners.
*Richard H. M. Hickok*, for the respondent.

212

214

216

**OPINION**

The issue to be decided in this case relates to the income tax consequences of petitioner's purported gifts to his minor children of 90 percent of the outstanding stock of Kelly Supply, which then elected to be taxed as a subchapter S corporation. Respondent contends that the purported gifts were so devoid of economic reality that they should be disregarded for tax purposes and that all of the taxable income of Kelly Supply should be taxable to petitioner as the actual owner of the stock.[5] In the event we recognize petitioner's children as the owners of the stock, respondent contends that the taxable income of the corporation should be allocated to petitioner pursuant to section 1375 (c),[6] in order to reflect the value of his services thereto.

In this case, we are again faced with the task of determining the efficacy of a taxpayer's attempt to split income within a family group.

---

[5] Respondent does not contend that Kelly Supply is itself a sham, *Britt* v. *United States*, 292 F. Supp. 6 (M.D. Fla. 1968), but rather that the gifts of the stock thereof were without economic reality.

[6] SEC. 1375(c). TREATMENT OF FAMILY GROUPS.—Any dividend received by a shareholder from an electing small business corporation (including any amount treated as a dividend under section 1373(b)) may be apportioned or allocated by the Secretary or his delegate between or among shareholders of such corporation who are members of such shareholder's family (as defined in section 704(e)(3)), if he determines that such apportionment or allocation is necessary in order to reflect the value of services rendered to the corporation by such shareholders.

The tax principles that control this determination were aptly stated in *Jeannette W. Fitz Gibbon*, 19 T.C. 78 (1952), as follows:

Transactions within a family group are subject to special scrutiny in order to determine if they are in economic reality what they appear to be on their face. This is not to say, however, that all arrangements between members of a family which affect their tax liabilities will be disregarded. It is authoritatively established that where a taxpayer attempts to transfer property and the end result of such transfer does not effect a complete shift in the economic incidents of ownership of such property, the transaction will be disregarded for Federal income tax purposes. This is true because the transferor in such cases retains such control over the property that he is the one who derives the real benefit from the economic gain thereon. * * *

Section 1.1373–1(a)(2), Income Tax Regs., reflects these principles in the area of transfers of stock of subchapter S corporations.[7] This regulation provides that:

(2) * * * A donee or purchaser of stock in the [subchapter S] corporation is not considered a shareholder unless such stock is acquired in a bona fide transaction and the donee or purchaser is the real owner of such stock. The circumstances, not only as of the time of the purported transfer but also during the periods preceding and following it, will be taken into consideration in determining the bona fides of the transfer. Transactions between members of a family will be closely scrutinized.

Petitioner's position is that a valid gift of the stock was made in accordance with the requirements of the Alaska Gifts of Securities to Minors Act and that this was a bona fide gift for tax purposes so as to make the income taxable to his children pursuant to section 1373 (b).[8] It is well established that the validity of a transaction under State law is not conclusive of its bona fides for the purpose of Federal taxation. *Commissioner* v. *Tower*, 327 U.S. 280 (1946); *Gouldman* v. *Commissioner*, 165 F. 2d 686 (C.A. 4, 1948). Thus, petitioner's assertion that the gift was valid under the Alaska Gifts of Securities to Minors Act, even if true, does not resolve the question before us.[9] Rather, our question is whether petitioner has transferred all command over and enjoyment of the economic benefit of the Kelly Supply

---

[7] See note, "Assignment of Income: Possibilities Under Subchapter S," 23 Tax L. Rev. 213 (1968).

[8] SEC. 1373(b). AMOUNT INCLUDED IN GROSS INCOME.—Each person who is a shareholder of an electing small business corporation on the last day of a taxable year of such corporation shall include in his gross income, for his taxable year in which or with which the taxable year of the corporation ends, the amount he would have received as a dividend, if on such last day there had been distributed pro rata to its shareholders by such corporation an amount equal to the corporation's undistributed taxable income for the corporation's taxable year. * * *

[9] Respondent argues on brief that the gifts to the children did not qualify under the Alaska Gifts to Minors Act because the stock certificates were made out in the names of petitioner's minor children and not in the name of a custodian. However, even assuming *arguendo* that the gift did qualify under the Alaska statute, in light of our discussion below we think the transfers were not bona fide gifts for Federal tax purposes.

stock so as to have made his children the true owners thereof for Federal tax purposes. *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945); *Helvering* v. *Clifford*, 309 U.S. 331 (1940); *Corliss* v. *Bowers*, 281 U.S. 376 (1930). We do not think petitioner has done so.

Respondent relies principally on the *Henry D. Duarte* case, 44 T.C. 193 (1965). In that case, the taxpayer, the sole shareholder of a corporation, transferred a 25-percent stock interest to each of his two minor children, pursuant to the New York Uniform Gifts to Minors Act, with the taxpayer's wife serving as custodian of the stock. A gift tax return was filed reporting the transfer, although no gift tax liability resulted. Thereafter, the corporation elected to be taxed under subchapter S. We found as facts, *inter alia*, that the petitioner, rather than the custodian of the children, continued after the transfers to exercise complete control over the policies and operation of the corporation; and that despite the reporting of dividends, both actual and constructive, by the corporation on its information returns and the taxpayer and his sons on their individual returns, neither son actually received any dividends. Viewing all the evidence therein, we held that the purported transfers of stock by the taxpayer had no economic reality; and that the taxpayer was the true economic owner of all the stock of the corporation. Although we think the instant case less clear cut than *Duarte*, nevertheless, for the reasons to be discussed below, we hold that petitioner's stock transfers lacked economic reality and that petitioner remained the true economic owner of the Kelly Supply stock during the years at issue.

In the instant case, there is no evidence that either petitioner's wife, as the custodian of the Kelly Supply stock, or the children themselves exercised any influence in the operation of Kelly Supply. Rather, it appears that petitioner, at all times continued to completely control the policies and operation of Kelly Supply. *Henry D. Duarte, supra.*

Further, petitioner continued to exercise control over the Kelly Supply stock, even after its purported transfer, by his intention to retain the power to adjust the stock ownership among his minor children. After the birth of his fourth child, Paul, in May 1961, petitioner intended to redistribute the stock of Kelly Supply among his children. In this regard, petitioner had the corporate minutes reflect there was to be a transfer of 75 shares each from Beverly, David, and Mark to Paul; had the stockholders, including Paul, file a new subchapter S election for Kelly Supply; had Paul file individual tax returns reflecting his income from Kelly Supply; and had Paul's interest reflected in Kelly Supply's tax returns. The fact that petitioner's attorney, for whatever reason, never issued the new stock certificates does not weaken the inference that, in the mind of petitioner, he had

such complete dominion and control over the stock as to have it redistributed among his children. *Ralph R. Anderson*, 5 T.C. 443, 451 (1945), affd. 164 F. 2d 870 (C.A. 7, 1947).

In addition to the dominion and control exercised by petitioner, he also, in substance, retained the enjoyment of the economic benefits of ownership of the Kelly Supply stock after its purported transfer. During the years 1960 through 1965, Kelly Supply had distributable income of $130,366.54. Of that amount, only $21,993.51 was distributed to the children, solely in order to defray their income tax liabilities. Although petitioner maintained bank accounts for his children during this period, there were never any substantial deposits made to these accounts and the income of Kelly Supply which was reflected on the children's tax returns was not deposited therein. Rather, the bulk of Kelly Supply's income was retained by the corporation and borrowed by petitioner on open account for his personal use. In this manner, petitioner availed himself of Kelly Supply to generate over $70,000 in funds for his personal use, in the form of unsecured advances from that corporation.

These advances were made by Kelly Supply without interest for some years and, when interest was charged by the corporation, petitioner never actually went "out of pocket" to pay it.[10] Furthermore, the manner of repayment of the advances casts doubt on their arm's-length nature. During the years in issue petitioner transferred $12,300 worth of Raypath stock to Kelly Supply in reduction of his indebtedness thereto. This Raypath stock was earned by petitioner as a management fee from Raypath and his transfer of it to Kelly Supply provided a simple manner of converting to cash this compensation received in the form of close corporation stock. In addition, petitioner transferred a note of Commercial Stationers, Inc., which he valued at $6,966.86, as satisfaction of part of his indebtedness to Kelly Supply. Commercial Stationers, Inc., was a corporation owned 20 percent by petitioner which was in financial difficulty, and up to the time of trial, it had not made a payment of either principal or interest on its note held by Kelly Supply.

Even were we to conclude that these advances created a genuine indebtedness of petitioner to Kelly Supply, we think it follows nevertheless, that under the circumstances herein, petitioner must be considered to have retained the enjoyment of the economic benefits of ownership of the Kelly Supply stock after its alleged transfer to his children.

---

[10] In one instance, petitioner concurrently borrowed the same amount from the corporation as he supposedly was paying in interest, and in another, the interest payment was offset against the dividend due petitioner in that year from the corporation.

220

For the reasons discussed above, we hold that petitioner's purported transfers of the Kelly Supply stock were not bona fide, as they lacked economic reality, and petitioner remained the real owner thereof during the years in issue. In light of this determination, we need not consider respondent's alternative contention that the income of Kelly Supply should be allocated to petitioner pursuant to section 1375 (c) to reflect the value of his services thereto.[11]

*Decision will be entered under Rule 50.*