## MICHAEL F. BEIRNE AND CORINNE A. BEIRNE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3491–71.   Filed November 26, 1973.

*Robert C. Lowe*, for the petitioners.
*Thomas N. Tomashek*, for the respondent.

IRWIN, *Judge*: Respondent determined the following deficiencies in the income taxes of petitioners:

| Year | Deficiency |
|------|------------|
| 1965 | $13,854.37 |
| 1966 | 19,361.00 |
| 1967 | 14,946.50 |

Several adjustments made by respondent have not been contested by petitioner. Accordingly, the issues for decision are (1) whether petitioners are collaterally estopped by a prior judgment in this Court involving the years 1960 through 1962 from denying that gifts of stock to their children were not bona fide and (2) whether petitioners or their children should be treated as the owners of the stock during the years in issue.

### FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. Pursuant to the stipulation of the parties we also incorporate by this reference the stipulations of fact and exhibits attached thereto which were filed by the parties in docket No. 1219-66, *Michael F. Beirne*, 52 T.C. 210 (1969).

Petitioners are Michael F. Beirne and Corinne A. Beirne, husband and wife, who have resided at all relevant times in Anchorage, Alaska.

At all relevant times Michael F. Beirne (hereafter referred to as petitioner) has been a medical doctor specializing in pathology in Anchorage, Alaska.

Petitioners are the natural parents of each of the following children born on the dates set forth:

| Name | Birth date |
|------|------------|
| Beverly Lorraine Beirne (Beverly) | June 5, 1953 |
| David Michael Beirne (David) | July 3, 1955 |
| Mark Joseph Beirne (Mark) | Sept. 9, 1959 |
| Paul Roe Beirne (Paul) | May 25, 1961 |

In 1959, Dr. Beirne and other doctors formed a corporation known as Raypath, Inc. (hereinafter referred to as Raypath), which constructed a medical-dental building in Anchorage known as the Medical Arts Building. This building was financed by a loan from the Small Business Administration, one of the provisions of which required that any management fees paid by Raypath in connection with the operation of the building would be paid only by the issuance of stock in Raypath. The loan agreement also provided that no cash dividends could be paid upon the stock of Raypath so long as the loan to the Small Business Administration was outstanding. Dr. Beirne's pathology laboratory, known as Alaska Medical Laboratories, was located in the Medical Arts Building as was the Medical Arts Pharmacy, also owned by Dr. Beirne. Prior to January 1966, Dr. Beirne managed the Medical Arts Building for Raypath and received stock in Raypath as compensation for these management services.

Kelly Supply Co. (hereafter referred to as Kelly Supply) is a corporation duly incorporated under the laws of the State of Alaska on

April 27, 1960. Kelly Supply had authorized capital stock of 100,000 shares of $1 par value stock, with 1,000 shares originally issued in May 1960 constituting the only issued and outstanding stock during the years involved.

Kelly Supply's first board of directors meeting was held on May 4, 1960, and the minutes of that meeting included the following:

The President [i.e, petitioner] announced that he wished to invest $1,000.00 for the company's capital stock to comply with Paragraph Fifth [sic Fourth] of the Articles of Incorporation.

The President announced that he intended to give stock to the minor children of himself and the corporation Secretary. He stated that he intended to give to Beverly Lorraine Beirne, 300 shares; David Michael Beirne, 300 shares; and Mark Joseph Beirne, 300 shares. He directed that the said gifts would not be effective until the stock is issued by the corporation to Michael F. Beirne, custodian for _____.

On motion duly made and seconded it was

RESOLVED: That the corporation issue to the President 100 shares and to each of the three minor children of the President, 300 shares.

The Secretary was instructed to prepare the proper stock certificates with the legend above indicated, entering the same into and making them a part of the permanent records of the corporation. The President observed that he would then hold stock certificate No. 1 for 100 shares, Beverly Lorraine Beirne would hold No. 2 for 300 shares, David Michael would hold No. 3 for 300 shares, and Mark Joseph would hold No. 4 for 300 shares. The President further announced that he is making gifts of securities to his minor children pursuant to Chapter 24, SLA 1957, and asked that his intent to bring himself within that law be spread upon the corporate records and minutes.

The Kelly Supply corporation minute book containing the record of stockholders indicates the stock was issued in accordance with the resolution.

On the stock certificates of Kelly Supply, numbered 2, 3, and 4, the names of the owners were designated as Beverly Lorraine Beirne, David Michael Beirne, and Mark Joseph Beirne, respectively.

Petitioner paid the consideration for the 1,000 shares of Kelly Supply stock by transferring $5,000 worth of Raypath stock owned by him to Kelly Supply in exchange for the 1,000 shares and a $4,000 balance on an open account due from Kelly Supply to petitioner.

On May 24, 1960, the stockholders of Kelly Supply executed a consent to Kelly Supply's election to be taxed under section 1372(a).[1] This consent was executed by petitioner having 100 shares and by petitioner as custodian for Beverly, David, and Mark having 300 shares each.

On May 25, 1961, Paul was born to the petitioners. Thereafter, the minutes of Kelly Supply signed by petitioner reflect that Beverly, David, and Mark were each to transfer 75 of their shares to Paul so

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

that thereafter petitioner's four children would each own 225 shares of the stock of Kelly Supply.

On December 27, 1961, the stockholders of Kelly Supply executed a new consent to have the corporation taxed under section 1372(a). This consent was executed by Corinne A. Beirne as the custodian of the stock of Beverly, David, Mark, and Paul and states that each of the children owns 225 shares and that they had acquired their stock on December 27, 1961.

On January 20, 1962, petitioner delivered Beverly, David, and Mark's stock certificates numbered 2, 3, and 4, respectively, to his attorney, Clifford Groh, with the following memorandum of petitioner attached:

1. Here are the certificates requested.
2. I will be in later this week with names and amts. per Bill Scott. So hold up.

This transaction was never completed in accordance with the memorandum and no new certificates of stock indicating Corinne A. Beirne's designation as custodian and Paul's interest in Kelly Supply were ever issued.

After the birth of Paul, income tax returns in his name were filed reflecting a proportionate share of the income of Kelly Supply.

Prior to the formation of Kelly Supply, petitioner purchased his medical supplies for Alaska Medical Laboratories, the name under which he conducted his pathology practice, directly from wholesalers and retail men. After the formation of Kelly Supply, Alaska Medical Laboratories bought its supplies from Kelly Supply. For the years 1960 through 1963 Kelly Supply had the following gross profits on sales made to Alaska Medical Laboratories:

|  | 1960 | 1961 | 1962 | 1963 |
|---|---|---|---|---|
| Gross sales | $26,368.54 | $35,250.47 | $40,045.23 | $12,409.45 |
| Cost of sales | 15,639.47 | 14,449.56 | 19,086.66 | 6,915.43 |
| Gross profits | 10,729.07 | 20,800.91 | 20,958.57 | 5,494.02 |

Kelly Supply had no warehouse facilities other than petitioner's space in the Medical Arts Building.

Kelly Supply discontinued the sale of medical supplies in 1963, and thereafter most of its income came from the operation of a pharmacy. In particular Kelly Supply made no sales to Alaska Medical Laboratories in 1965, 1966, and 1967.

The Medical Arts Pharmacy was owned and operated by petitioner as a sole proprietorship until April 1, 1961, at which time it was transferred to Kelly Supply for its net book value of $4,967.15. The Medical Arts Pharmacy is conducted in the same manner as any other com-

mercial pharmacy. Its income is basically derived from filling prescriptions for patients of doctors whose offices are located in the Medical Arts Building.

From April 1, 1961, until September 1, 1962, Medical Arts Pharmacy was operated by Kelly Supply. On September 1, 1962, Kelly Supply formed a partnership with a licensed pharmacist, Osborn Allen, and the Medical Arts Pharmacy was transferred to this partnership by Kelly Supply at book value. Although Allen did not put any capital into the partnership, the profits were divided on a 50-50 basis. This situation continued until Allen's death in 1965, whereupon the pharmacy was reconveyed to Kelly Supply which thereafter operated it and employed a pharmacist on a salary-plus-bonus basis.

The income of Kelly Supply for the years 1960 through 1967 was as follows:

| | | | |
|---|---|---|---|
| 1960 | $9,665.95 | 1964 | $19,358.77 |
| 1961 | 26,239.35 | 1965 | 25,091.87 |
| 1962 | 31,817.78 | 1966 | 45,262.67 |
| 1963 | 18,192.82 | 1967 | 38,106.00 |

Pursuant to the election of Kelly Supply to be taxed as a small business corporation, its stockholders filed tax returns for the years 1965 through 1967 reporting their ownership of stock in and income from Kelly Supply as follows:

| Stockholder | Number of shares | 1965 | 1966 | 1967 |
|---|---|---|---|---|
| M. F. Beirne | 100 | $2,378.42 | $4,526.27 | $3,810 |
| B. L. Beirne | 225 | 5,351.44 | 10,184.10 | 8,574 |
| D. M. Beirne | 225 | 5,351.44 | 10,184.10 | 8,574 |
| M. J. Beirne | 225 | 5,351.44 | 10,184.10 | 8,574 |
| P. R. Beirne | 225 | 5,351.44 | 10,184.10 | 8,574 |
| Total | 1,000 | [2] 23,784.18 | 45,262.67 | 38,106 |

The following distributions were made by Kelly Supply Co. in order to pay the income tax liability reflected upon the income tax returns of the minor children of the petitioners as follows:

| | 1960 | 1961 | 1962 | 1963 |
|---|---|---|---|---|
| B. L. Beirne | None | $456 | $1,189.58 | $1,559.19 |
| D. M. Beirne | None | 456 | 1,189.58 | 1,559.20 |
| M. J. Beirne | None | 456 | 1,189.58 | 1,559.20 |
| P. R. Beirne | None | None | 1,189.58 | 1,559.20 |
| M. F. Beirne | None | None | 680.70 | None |

² Kelly Supply Co. received a long-term capital gain in the amount of $1,307.69 which was taxed to its stockholders as follows:

| | |
|---|---|
| Michael F. Beirne | $130.77 |
| Beverly L. Beirne | 294.23 |
| David M. Beirne | 294.23 |
| Mark J. Beirne | 294.23 |
| Paul R. Beirne | 294.23 |

|  | 1964 | 1965 | 1966 |
|---|---|---|---|
| B. L. Beirne | $1,115.20 | $1,292.40 | $722.86 |
| D. M. Beirne | 1,115.20 | 1,292.40 | 722.86 |
| M. J. Beirne | 1,115.20 | 1,292.40 | 722.86 |
| P. R. Beirne | 1,115.20 | 1,292.40 | 722.86 |
| M. F. Beirne | None | 1,763.02 | 321.27 |

The distributable income of Kelly Supply Co., the cash distributions to stockholders, and a fourth child, Paul Roe Beirne, and the income accumulated by Kelly Supply Co. for the years 1960 through 1967 were as follows:

| Year | Distributable income | Distributions | Accumulated income |
|---|---|---|---|
| 1960 | $9,665.95 | None | $9,665.95 |
| 1961 | 26,239.35 | $1,386.00 | 24,853.35 |
| 1962 | 31,817.78 | 5,439.02 | 26,378.76 |
| 1963 | 18,192.82 | 6,236.79 | 11,956.03 |
| 1964 | 19,358.77 | 4,460.80 | 14,897.97 |
| 1965 | 25,091.87 | 6,932.62 | 18,159.25 |
| 1966 | 45,262.67 | 3,212.71 | 42,049.96 |
| 1967 | 38,106.00 | 14,647.00 | 23,459.00 |
| Total | 213,735.21 | 42,314.94 | 171,420.27 |

During the years 1960 through 1966 petitioner received unsecured advances totaling $83,476.66 from Kelly Supply as follows:

| | | | |
|---|---|---|---|
| 1960 | $5,000.00 | 1965 | $9,000.00 |
| 1961 | 12,467.15 | 1966 | 15,186.37 |
| 1962 | 29,867.21 | | |
| 1963 | 8,500.00 | Total | 83,476.66 |
| 1964 | 3,455.93 | | |

The following payments of principal were made by petitioner to Kelly Supply:

### 1960

No payments were made during the year 1960.

### 1961

| Date | | Amount |
|---|---|---|
| 4/1/61 | Transfer of Medical Arts Pharmacy to Kelly Supply | $4,967.15 |
| 4/27/61 | Transfer of Raypath stock for management fees | 5,400.00 |
| 12/31/61 | Deposit by Michael F. Beirne of check from St. Joseph's Hospital | 4,849.16 |
| | | 15,216.31 |

### 1962

| | | |
|---|---|---|
| 12/31/62 | Transfer of Raypath stock | $6,900.00 |
| 12/31/62 | Kelly Supply dividend | 680.70 |
| 12/31/62 | Cash payment from Alaska Medical Laboratories | 1,500.00 |
| | | 9,080.70 |

*1963*

| Date | | Amount |
|------|------|--------|
| 6/7/63 | Cash payment from Alaska Medical_____ | $3,700.00 |

*1964*

No payments were made during the year 1964.

*1965*

| | | |
|------|------|--------|
| 3/3/65 | Transfer of Raypath stock bought from Dr. Grabah___ | $5,000.00 |
| Oct. 1965 | Alaska Mutual Savings Bank—debenture No. 12_____ | 3,000.00 |
| Nov. 1965 | Transfer of note from Commercial Stationers, Inc.[3]___ | 6,966.86 |
| Dec. 1965 | Cash payment_____ | 926.42 |
| 3/31/65 | Dividend of Kelly Supply_____ | 1,763.02 |
| | | 17,656.30 |

*1966*

| | | |
|--------|------|--------|
| 1/1/66 | Payment by Dr. Beirne to Medical Arts Pharmacy_____ | $365.00 |
| 1/1/66 | Dividend from Kelly Supply Co_____ | 321.27 |
| | | 686.27 |

On December 31, 1966, petitioner paid $40,000 to Kelly Supply by personal check which payment was credited upon its books against the balance of amounts then due Kelly Supply from petitioner. Kelly Supply then purchased a 30-day time certificate of deposit from the National Bank of Alaska in the amount of $40,000. On August 31, 1967, Kelly Supply cashed the certificate of deposit and then loaned $40,000 to petitioner.

The books and records of Kelly Supply reflect that petitioner was indebted to Kelly Supply prior to the end of each of the years 1960 through 1967 in the following amounts:

| Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1960 _____ | $5,000.00 | 1964 _____ | $31,893.28 |
| 1961 _____ | 2,850.84 | 1965 _____ | 24,825.64 |
| 1962 _____ | 21,387.35 | 1966 _____ | 671.91 |
| 1963 _____ | 26,187.35 | 1967 _____ | 40,671.91 |

Although petitioner had always maintained bank accounts for his minor children, there were never any substantial deposits made to those accounts and the income of Kelly Supply which was taxed to the minor children was not deposited to those accounts.

Petitioners have previously litigated the question of whether the gifts to their children of the stock of Kelly Supply were bona fide with respect to the years 1960, 1961, and 1962 in *Michael F. Beirne,*

---

[3] A corporation owned 20 percent by petitioner. This note was paid in 1971:

52 T.C. 210 (1969). Our decision in that case was entered August 4, 1969, and became final on November 4, 1969.

In 1960 petitioner organized Kelly Supply and gave 90 percent of its stock to three of his minor children. When another child was born in 1961 petitioner attempted to reallocate the stock of his children so that the new child would share equally with the original three. At all times Kelly Supply has elected not to be taxed as a corporation under section 1372. In *Michael F. Beirne*, 52 T.C. 210 (1969), we held that the gifts of the stock of Kelly Supply were not bona fide and that petitioner rather than his children was taxable on the income of the corporation for 1960, 1961, and 1962 under section 1373. Petitioner now contests respondent's determination that he is taxable on the income of Kelly Supply for the years 1965 through 1967.

Respondent first contends that petitioner is collaterally estopped from attempting to establish the validity of the gifts by the decision of this Court in *Michael F. Beirne, supra*. Alternatively, respondent contends that the gifts of the stock were not bona fide during the years here in issue.

We believe that respondent has attempted to use the doctrine of collateral estoppel too broadly in this case. While we would agree that our prior decision prevents petitioner from attempting to relitigate any fact or issue decided therein, we do not think that a decision that a gift was not valid in the years 1960 through 1962 can bar petitioner from litigating the separate question of whether the gift was valid in the subsequent years before us. In our prior decision we held that, although petitioner transferred the stock of Kelly Supply to his children, the transfers were without economic substance because petitioner retained control over the stock. We think that petitioner may properly show either that he relinquished control over the stock or that circumstances changed in subsequent years in such a way that the transfers to the children had economic substance. Such a showing would in no way impugn our prior decision or relitigate any of the facts or issues therein.

The application of collateral estoppel in tax cases is governed by the Supreme Court's opinion in *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948), the following excerpt of which supports our approach here:

> But collateral estoppel is a doctrine capable of being applied so as to avoid an undue disparity in the impact of income tax liability. A taxpayer may secure a judicial determination of a particular tax matter, a matter which may recur without substantial variation for some years thereafter. But a subsequent modi-

fication of the significant facts or a change or development in the controlling legal principles may make that determination obsolete or erroneous, at least for future purposes. If such a determination is then perpetuated each succeeding year as to the taxpayer involved in the original litigation, he is accorded a tax treatment different from that given to other taxpayers of the same class. As a result, there are inequalities in the administration of the revenue laws, discriminatory distinctions in tax liability, and a fertile basis for litigious confusion. * * * Such consequences, however, are neither necessitated nor justified by the principle of collateral estoppel. That principle is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally. It is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers.

And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. * * * And where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive. * * * [333 U.S. at 599–600.]

We believe that respondent's reliance upon *Jacques R. Milberg*, 54 T.C. 1562 (1970), and *George A. Dean*, 56 T.C. 895 (1971), is misplaced. In both of those cases the taxpayer attempted to offer evidence, which could have been available at the prior trial, tending to show that the prior decision was in error. In essence, the taxpayers in *Milberg* and *Dean* were trying to obtain a new trial of their original cases. As we have stated, we believe that petitioner is trying to demonstrate that a change in facts occurred after the years in issue in the original decision and that this change requires a different decision for the subsequent years only. We also reject respondent's contention that petitioner's evidence of a change in circumstances in 1963 cannot be used in this case because such evidence was available at the time the first case was tried. Evidence of a change in circumstances occurring in 1963 would have had little bearing on a determination of the facts as they existed for the years previously in issue, 1960 through 1962. The doctrine of collateral estoppel only bars the introduction of evidence which was necessary for the prior determination. *Cromwell* v. *County of Sac*, 94 U.S. 351 (1876) ; *Radford* v. *Myers*, 231 U.S. 725 (1914) ; *Partmar Corp.* v. *Paramount Corp.*, 347 U.S. 89 (1954).

Although we hold that petitioner may attempt to prove that a change in circumstances occurred in 1963, petitioner's victory on that issue is unfortunately a Pyrrhic one. The only new evidence presented by petitioner established that Kelly Supply discontinued its medical supply business in 1963 and also stopped selling supplies to petitioner's medical practice at the same time and that the note from Commercial Stationers, Inc., transferred by petitioner to Kelly Supply

in 1965 as a payment on Kelly Supply's advances to him had been paid in 1971.

In our prior opinion we relied upon the following factors in reaching the conclusion that the gifts of the stock of Kelly Supply were not bona fide:

(1) Petitioner's wife, as custodian of the interests of the children, never acted in such capacity;

(2) Petitioner exercised complete dominion over the stock of Kelly Supply;

(3) Petitioner retained the economic enjoyment of the benefits of ownership because only a small portion of the earnings of Kelly Supply were distributed to the children and because petitioner obtained the use of the undistributed earnings through large unsecured advances; and

(4) Petitioner did not deal at arm's length with Kelly Supply either in obtaining the advances or paying them back.

Although our decision was undoubtedly influenced by the fact that a large part of the profits of Kelly Supply came from dealings with petitioner's medical practice, such dealings were not discussed in our prior opinion and they could not be considered a decisive factor in reaching the decision. In reference to the note from Commercial Stationers, Inc., transferred to Kelly Supply in 1965 as a payment on advances to petitioner—which was paid in 1971—our prior opinion cited the fact that this corporation was in financial difficulties and no payments on principal or interest had been made at the time of the prior trial as only one instance of doubts cast as to the arm's-length nature of the advances. Accordingly, we do not think that petitioner has shown that a significant enough change occurred which would cause us to alter our opinion of the bona fides of the gifts to his children.

Petitioner has not demonstrated that he relinquished control over the stock allegedly owned by his children. He still has control over the stock and control over the affairs of Kelly Supply. Petitioner still retains the economic enjoyment of the earnings of the company through large unsecured advances, and he is still able to play fast and loose in repaying these advances. Similarly, petitioner's children have yet to reap any of the benefits of ownership of the stock. None of the earnings have been distributed to them except for amounts necessary to pay their tax liabilities, and no action has ever been taken on their behalf by their mother as custodian of their stock. In short, nothing basic has changed since the years in issue in *Michael F. Beirne*, 52 T.C. 210 (1969), and we shall follow that decision here.

*Decision will be entered for the respondent.*