ALAN D. WEINER and PHYLLIS F. WEINER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROBERT S. SCHULL and ROSALIND SCHULL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weiner v. Commissioner
Docket Nos. 5193-79, 5194-79.
United States Tax Court
T.C. Memo 1984-163; 1984 Tax Ct. Memo LEXIS 511; 47 T.C.M. (CCH) 1414; T.C.M. (RIA) 84163; April 2, 1984. *511 Radiology is a Subchapter S corporation. Shortly after forming Radiology, Ps transferred all of the company's stock to their children. Held, the transfers were not bona fide. Ps are the true owners of Radiology's stock and the company's income is taxable to them and not to their children.
Held further, certain claimed losses on a purported investment in a movie partnership are not deductible for lack of substantiation. Jack Calechman and Richard Doppelt, for the petitioners. John O'Brien and Robert Dugan, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income tax as follows: Docket No.
Petitioner
Year
Deficiency
5193-79
Alan D. Weiner and
1975
$31,410.95
Phyllis F. Weiner
5194-79
Robert S. Schull and
1975
32,699.80
Rosalind Schull
*512 The issues for decision are (1) whether transfers of stock by petitioners to their children were bona fide, and (2) whether petitioners are entitled to deduct losses resulting from a purported investment in a movie partnership. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners Alan D. Weiner (Dr. Weiner) and Phyllis F. Weiner and Robert S. Schull (Dr. Schull) and Rosalind Schull resided in Brockton, Massachusetts, at the time their petitions were filed. Issue 1. Stock Transfers
Drs. Weiner and Schull are orthopedic surgeons engaged in the private practice of medicine in Brockton, Massachusetts. In 1970, they formed a professional association entitled Drs. Alan D. Weiner and Robert S. Schull, Inc. (hereinafter "Doctors Association"). In 1971, Drs. Weiner and Schull caused a second corporation to be formed which established a radiology office to take X-rays. This corporation was called Center Radiology (hereinafter "Radiology") and occupied the same premises as Doctors Association. The two offices were, however, physically separate. The properties *513 occupied by Doctors Association and Radiology were owned 50 percent by Dr. Schull and 50 percent in trust by the children of Dr. Weiner. Radiology was incorporated on January 14, 1971. Drs. Weiner and Schull each received 300 shares of no-par common stock issued by Radiology. One week later, on January 21, 1971, Drs. Weiner and Schull transferred all of their stock to their children. The names, number of shares owned, and ages of the children in 1975 were as follows: Name
No. Shares
Age in 1975
Martin Weiner
150
17
Jill Weiner
150
13
Elizabeth Schull
100
12
David Schull
100
10
Jennifer Schull
100
6
600
No custodian was named for any of the children in connection with these transfers of stock. From the time of incorporation in 1971 to the time of the trial of this case, Dr. Schull served as president of Radiology and Dr. Weiner served as treasurer. The doctors and their wives served as directors of the corporation during that period as well, with one exception. [1]
In 1973, petitioners filed an election to have Radiology classified as a small business corporation *514 under Subchapter S of the Internal Revenue Code of 1954. Throughout the existence of Radiology, Drs. Weiner and Schull have controlled the affairs of the corporation. They determined who the directors would be. They hired Radiology's office manager, Anne Rosenthal, [2] and X-ray technician, Walter Dooley, and determined their salaries. They retained an accountant for Radiology (who also did the accounting work for Doctors Association). They signed checks and made payments for the expenses and obligations of Radiology. They negotiated the rental agreement for the space occupied by Radiology. They arranged for bank loans to finance the purchase of X-ray equipment for Radiology. They also made the initial capital contributions to the corporation. Aside from these activities, Radiology required very little daily attention from Drs. Weiner and Schull. They rarely, if ever, visited the premises. The office manager, Ms. Rosenthal, set the fees and billed the patients. The X-ray technician, Mr. Dooley, was paid through an outside agency *515 called Professional Staff Association. The children of Drs. Weiner and Schull never played a role in voting the stock held in their name and never exercised any influence in the operation of the corporation. Indeed, in 1975 the children were not aware that they were stockholders of Radiology. During 1975, Radiology made distributions and extended what was characterized as loans to the children as follows: Name
Distribution
Loans
Martin Weiner
$9,000
$1,878.75
Jill Weiner
9,000
1,878.75
Elizabeth Schull
6,000
1,252.50
David Schull
6,000
1,252.50
Jennifer Schull
6,000
1,252.50
The loans were never repaid. While patients of Drs. Weiner and Schull were never under obligation to patronize Radiology to obtain their X-rays, the bulk of Radiology's business has always consisted of referrals from Doctors Association. Dr. Weiner's wife served part-time as bookkeeper for Radiology. An entry in Radiology's cash disbursements journal for 1974 indicates a payment of $120.00 to Dr. Weiner's mother-in-law. Issue 2. Deduction of Losses
Sometime in 1975, Dr. Weiner was approached by a man named Rogers who solicited Dr. Weiner to invest in *516 a film in which Mickey Rooney, Hal Holbrook and Beau Bridges were to star. Drs. Weiner and Schull each claim to have invested $7,500 in the film as partners in "G. L. Rogers et al." They each claim to have made payment by checks dated December 26, 1975, to "NALMCO" in the amount of $4,000 and to "Enthusiasm for Youth Foundation" in the amount of $3,500. Drs. Weiner and Schull assert that they never received any return on their purported investment. It appeared that no movie was ever made. Dr. Weiner subsequently learned that Mr. Rogers had previously been indicted and charged with promoting fraudulent tax shelters involving movies. OPINION
Issue 1. Stock Transfers
This case involves an attempt by two families to distribute the stock of a Subchapter S corporation among their children to achieve a division and splitting of the corporation's income. Respondent argues that the transfers of stock to the children were not bona fide and that the corporation's income and purported loans should instead be taxed to the parents who are the true shareholders. We agree. Respondent relies upon the following language of the regulation implementing section 1373: [3]
Only *517 those persons who are shareholders of the corporation on the last day of the taxable year of the corporation are required to include in their gross income the [undistributed taxable income of the corporation] * * *. A donee or purchaser of stock in the corporation is not considered a shareholder unless such stock is acquired in a bona fide transaction and the donee or purchaser is the real owner of such stock. The circumstances, not only as of the time of the purported transfer but also during the periods preceding and following it, will be taken into consideration in determining the bona fides of the transfer. Transactions between members of a family will be closely scrutinized. Section 1.1373-1(a)(2), Income Tax Regs.
Courts have developed a four-factor analysis to determine whether an intra-family transfer of stock is bona fide. The four factors are: (1) whether the transferees within the family were able to effectively exercise ownership rights *518 of their shares; (2) whether the transferor continued to exercise complete dominion and control over the transferred stock; (3) whether the transferor continued to enjoy economic benefits of ownership after conveyance of the stock; and (4) whether the transferor dealt at arm's length with the corporation involved. Speca v. Commissioner,630 F.2d 554, 556 (7th Cir. 1980), affg. a Memorandum Opinion of this Court. See Beirne v. Commissioner,61 T.C. 268 (1973); Beirne v. Commissioner,52 T.C. 210 (1969); Duarte v. Commissioner,44 T.C. 193 (1965). [4]
Guided by these factors, we must determine the true owners of Radiology's stock. Ownership of property for Federal income tax purposes is a question of fact to be determined from all the circumstances. Schoenberg v. Commissioner,302 F.2d 416 (8th Cir. 1962); Synder v. Commissioner,66 T.C. 785 (1976). Beneficial ownership, not merely legal title, determines who is the true owner of corporate stock. Hook v. Commissioner,58 T.C. 267 (1972). [5] The *519 substance, not the form, of a transaction governs its tax consequences. Commissioner v. Court Holding Co.,324 U.S. 331 (1945). Transfers of property between family members are "subject to special scrutiny in order to determine if they are in economic reality what they appear to be on their face." Fitz Gibbon v. Commissioner,19 T.C. 78, 84 (1952). The burden of proving the economic reality of the transfers of stock is on petitioners. Duarte v. Commissioner,44 T.C. 193 (1965); Rule 142(a). We now proceed to apply the above-mentioned factors to the facts before us: (1) Were the children of Drs. Weiner and Schull able to effectively exercise the ownership rights of their shares? We conclude that they were not. In 1975, all the children were minors and too immature to participate in the management of the corporation. [6] Indeed, petitioners stipulated that none of the children "ever played any role in voting the stock held in their name or in any way exercised any influence in the operation of the corporation." In 1975, none of the children even knew that *520 they were stockholders of Radiology.
Nevertheless, the appointment and active supervision of a custodian might have insured an effective transfer of ownership rights in the Radiology stock. Duarte v. Commissioner,44 T.C. at 197. Here, however, no custodian was appointed for the children. The absence of a custodian weighs heavily against the petitioners' contention that the stock transfers were bona fide. Speca v. Commissioner,630 F.2d at 557. [7]
(2) Did Drs. Weiner and Schull continue to exercise complete dominion and control over the transferred stock? We are persuaded that they did. We recognize that Drs. Weiner and Schull were officers of the corporation and that the management activities of officers should not be confused with the dominion and control of shareholders.We are convinced, however, that Drs. Weiner and Schull exercised a control over the affairs of Radiology that went beyond their role as executives and amounted to the conduct of owners. None of the children has ever *521 voted his or her shares of Radiology. It is not likely that the children felt that they could effectively challenge their fathers' judgment.Indeed, petitioners stipulated that "[f]rom the time of incorporation of Radiology to the present, Drs. Alan D. Weiner and Robert S. Schull have determined who the directors of Radiology would be." This ordinarily is the domain of stockholders, not officers. At trial, testimony by Dr. Weiner implied that he and Dr. Schull viewed Radiology from an owner's perspective. When asked why Radiology was separately incorporated, Dr. Weiner answered that one of the reasons was the opportunity for the doctors to leave a business to their children, because "[t]here is very little that a professional man can otherwise leave to his children." Moreover, when asked what he did to promote the growth and increase the profits of Radiology, Dr. Weiner responded: "We did very little to increase the profit and the growth because we really were not terribly interested in using it as a vehicle to accrue tremendous profits." (3) Did Drs. Weiner and Schull continue to enjoy economic benefits of ownership after conveyance of the stock? The record reveals that they *522 did. The children were unaware of distributions and loans made by Radiology to them; this money was controlled by petitioners. The funds were used by petitioners to defray expenses relating to the children that otherwise would have been borne by petitioners. [8] Mrs. Weiner testified that the increased after-tax income flowing from the children's ownership of stock enabled the children to go to private school and "to the camp that we picked for them." These are the economic obligations of parents, not those of minor children. (4) Did Drs. Weiner and Schull deal at arm's length with Radiology? Although Drs. Weiner and Schull refrained from some of the more flagrant abuses described in similar cases previously decided by this Court, [9] there is nevertheless evidence that petitioners did not always deal at arm's length with Radiology.On one occasion in 1974, Radiology made a payment to Dr. Weiner's mother-in-law that neither Dr. Weiner nor Mrs. Weiner could explain. Moreover, Dr. Weiner hired his sister as Radiology's office manager and later made her a director. Drs. Weiner and Schull did not appoint *523 a custodian to protect the children's interests in these matters. Taken together, the evidence bearing on the four factors discussed above reveals that the true beneficial owners of the Radiology stock were Drs. Weiner and Schull. We therefore conclude that Radiology's undistributed taxable income and distributions in 1975 must be taxed to Drs. Weiner and Schull.
We further conclude that Radiology's so-called loans to the children must be taxed to Drs. Weiner and Schull as well. Petitioners have the burden of proving that the purported loans were not dividend income taxable to the true owners of Radiology stock. Rule 142(a). Petitioners have not, however, offered any evidence to dispute respondent's recharacterization of the loans as dividends. Indeed, *524 the record reveals (1) that the loans were never repaid, (2) that Mrs. Winer, despite being Radiology's bookkeeper during the time in question, could not recall whether the payments "were put as loans-- whether their dividend was called a loan or not," and (3) that Mrs. Weiner never felt there was an obligation to repay Radiology. Issue 2. Deduction of Losses
Drs. Weiner and Schull each claim to be entitled to a deduction in 1975 for losses allegedly sustained in the amount of $7,500. These losses purportedly arise out of the doctors' investment in a movie production partnership called "G. L. Rogers et al." The fact that the investment was made is substantiated only by checks made out to two entities called "NALMCO" and "Enthusiasm for Youth Foundation." Petitioners have the burden of proving entitlement to any claimed deduction that respondent has disallowed. Rule 142(a). "Since deductions have been generally interpreted as being matters of legislative grace, the burden of proof rule has been applied with inexorable force to loss claims." Stivers v. Commissioner,360 F.2d 35, 41 (6th Cir. 1966). A threshold requirement for meeting this burden is, of *525 course, proof that the asserted transaction purportedly giving rise to the loss actually occurred. Bear Film Co. v. Commissioner,18 T.C. 354 (1952), affd. without discussion on this point, 219 F.2d 231 (9th Cir. 1955). Petitioners have failed to meet their burden. Nowhere in the record or briefs have petitioners explained the nature of "NALMCO" and "Enthusiasm for Youth Foundation," much less drawn a connection between these payees and the partnership "G. L. Rogers et al." We are unable to conclude from this record that petitioners' investment took place. [10] Accordingly, the claimed deduction for losses must be denied. Decisions will be entered for the respondent.
Footnotes
1. Phyllis Weiner served as director only from 1971 until 1978.↩
2. Ms. Rosenthal is Dr. Weiner's sister. She replaced Mrs. Weiner as a director of Radiology, following the divorce of Dr. and Mrs. Weiner.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect for the year in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure, except as noted.↩
4. Bell v. Commissioner,T.C. Memo. 1982-660↩.
5. Hume v. Commissioner,T.C. Memo. 1982-525↩.
6. See Barrier v. Commissioner,T.C. Memo. 1983-258↩.
7. See also Borkowski v. Commissioner,T.C. Memo. 1982-87↩.
8. See Borkowski v. Commissioner,T.C. Memo. 1982-87↩.
9. See Beirne v. Commissioner,52 T.C. 210 (1969) (father availed himself of large unsecured loans from the corporation for his personal use). See also Borkowski v. Commissioner,T.C. Memo. 1982-87 (large unsecured loans); Fundenberger v. Commissioner,T.C. Memo. 1980-113 (large unsecured loans). Compare Kirkpatrick v. Commissioner,T.C. Memo. 1977-281↩.
10. We therefore find it unnecessary to address petitioners' other arguments, all of which assume that the movie investment actually occurred.↩