DONALD O. AND CAROLYN KIRKPATRICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kirkpatrick v. Commissioner
Docket No. 3805-76.
United States Tax Court
T.C. Memo 1977-281; 1977 Tax Ct. Memo LEXIS 164; 36 T.C.M. (CCH) 1122; T.C.M. (RIA) 770281; August 22, 1977, Filed William H. Sutton,Byron M. Eiseman, Jr., and Lewis H. Mathis, for the petitioners. Suzanne B. O'Neill, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in the Federal income taxes of petitioners for the taxable years 1972 and 1973 in the amounts of $27,363 and $31,204.23, respectively. The only issue for decision is whether all of the taxable income of Quality Poultry and Egg Co., Inc. for its fiscal years ended June 30, 1972, and 1973, respectively, is attributable to petitioners and should be included in their gross income for the calendar years 1972 and 1973. The resolution of this issue depends upon whether petitioners' children were the owners of *166 a portion of the stock in the wholly-owned electing small business corporation for the calendar years 1972 and 1973. FINDINGS OF FACT Many of the facts have been stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, Donald O. and Carolyn Kirkpatrick, were residents of Little Rock, Arkansas, at the time their petition was filed in this proceeding. For the taxable years ended December 31, 1972, and 1973, respectively, petitioners filed joint Federal income tax returns with the Internal Revenue Service Center at Austin, Texas. Petitioners organized Quality Poultry and Egg Co., Inc. (sometimes referred to herein as Quality), an Arkansas corporation, in 1965. The corporation engages in the business of processing and selling poultry products. Quality has been a subchapter S corporation since 1965. During its fiscal years ended June 30, 1972, and June 30, 1973, Quality had in effect an election to be taxed as a small business corporation pursuant to sections 1371 through 1379. [1]
*167 Upon incorporation in 1965, 34 shares of Quality stock were issued to Donald Kirkpatrick, 34 shares were issued to Carolyn Kirkpatrick, and 2 shares were issued to Dorothy Scott. One day later, Dorothy Scott transferred her shares back to the corporation and one share was issued to Donald Kirkpatrick while the other share was issued to Carolyn Kirkpatrick. In 1965, petitioners gave their children Gina, Deborah, and Dona Kirkpatrick each ten percent of the stock of Quality. The shares of stock given to the children were issued to Carolyn Kirkpatrick, as custodian for each child. From 1965 to May 30, 1968, Donald and Carolyn Kirkpatrick and members of their family were shareholders of record of all the outstanding shares (100) of stock in Quality in the following proportions: Stockholder of Record
Percent of Stock Owned
Donald Kirkpatrick
35%
Carolyn Kirkpatrick
35%
Carolyn Kirkpatrick,
custodian for Gina Kirkpatrick
10%
Carolyn Kirkpatrick,
custodian for Deborah Kirkpatrick
10%
Carolyn Kirkpatrick,
custodian for Dona Kirkpatrick
10%
On June 1, 1968, Donald O. Kirkpatrick, Jr., was born and petitioners each gave 5 of their 35 shares to Carolyn *168 Kirkpatrick as custodian for Donald O. Kirkpatrick, Jr. After these transfers, Donald and Carolyn Kirkpatrick and members of their family were shareholders of record of all the outstanding shares of stock in Quality in the following proportions: Stockholder of Record
Percent of Stock Owned
Donald Kirkpatrick
30%
Carolyn Kirkpatrick
30%
Carolyn Kirkpatrick,
custodian for Gina Kirkpatrick
10%
Carolyn Kirkpatrick,
custodian for Deborah Kirkpatrick
10%
Carolyn Kirkpatrick,
custodian for Dona Kirkpatrick
10%
Carolyn Kirkpatrick,
custodian for Donald O. Kirkpatrick,
10%
Jr.
On January 1, 1973, Donald and Carolyn Kirkpatrick each transferred one additional share of Quality stock to each child. After these transfers, Donald and Carolyn Kirkpatrick each owned 26 shares of Quality stock, and each of their four children owned 12 shares, respectively. After these transfers, petitioners still maintained a majority interest (52%) in the stock of Quality. Quality timely filed its United States Small Business Corporation Income Tax Returns, Form 1120 S, for its fiscal years ended June 30, 1972, and June 30, 1973, with the Internal Revenue Service Center *169 at Austin, Texas. United States Individual Income Tax Returns, Form 1040, were filed for Gina, Deborah, Dona, and Donald O. Kirkpatrick, Jr. for the taxable years ended December 31, 1972, and December 31, 1973, respectively, with the Internal Revenue Service Center at Austin, Texas. Quality did not distribute income to the children during 1970 or 1971. Respondent taxed all the income of Quality for its fiscal years ending June 30, 1970, and 1971 to Donald O. Kirkpatrick for the calendar years 1970 and 1971. Computations were made as to how much of the corporation's taxable income should be allocated to each of the children from Quality's fiscal years ended June 30, 1967, through June 30, 1972, and the interest thereon up to July 1, 1972.
Promissory notes dated July 1, 1972, were prepared for each of the children, respectively, for the principal amount of his distributive share of the taxable income as computed by the corporation from June 1967 through June 1972, plus interest thereon, less the taxes paid each year on behalf of the children as a result of their reporting their shares of the taxable income from the corporation. The promissory notes, executed prior to the *170 audit of the Federal income tax returns for 1972 and 1973, were made payable to Carolyn Kirkpatrick as custodian for each of the four children. The principal and interest included in the total notes are as follows: Child
Principal
Interest
Total
Gina
$44,028.02
$5,472.05
$49,500.07
Deborah
44,028.02
5,472.05
49,500.07
Dona
44,028.02
5,472.05
49,500.07
Donald, Jr.
40,618.20
4,443.93
45,062.13
As security for the promissory notes, petitioners pledged their 52 shares of Quality stock. The notes were due 10 years from July 1, 1972, with interest at the rate of 6 percent payable annually with the first payment due June 30, 1974. Donald Kirkpatrick received cash distributions from Quality representing a part of the children's share of the undistributed income of Quality from June 30, 1967, through June 30, 1972. He used these funds to purchase real estate and to construct a building to house the principal offices, warehouse and plant facilities of Quality. Other loan proceeds were used to acquire other real estate investments. Carolyn Kirkpatrick wrote all the checks of the corporation and was aware of each withdrawal made by Donald Kirkpatrick. *171 She was both a director and officer of the corporation. She discussed potential investments with Donald Kirkpatrick prior to the time she released such funds to him. On several occasions she visited and inspected potential real estate investments with him prior to their acquisition. Carolyn Kirkpatrick was an active participant in the affairs of Quality and exercised considerable influence on the corporation's affairs in order to ensure that the corporation would not be run in a manner contrary to the children's interests. Donald O. Kirkpatrick borrowed $23,227.44 from the Worthen Bank & Trust Company of Little Rock on August 27, 1974, in order to pay the children the interest on the aforementioned promissory notes. Petitioners paid the children the interest due on the notes by purchasing certificates of deposit in the name of Carolyn Kirkpatrick as custodian for each child. Each certificate of deposit was dated August 27, 1974. The certificates for Gina, Deborah, and Dona Kirkpatrick were in the amounts of $5,940 each, while the certificate for Donald Jr. was in the amount of $5,407.44. Since the execution of the four promissory notes, Donald Kirkpatrick has made payments *172 of principal and interest of about $95,000 on the notes. Donald O. Kirkpatrick has a previously taxed income account in Quality of $110,083.81 as of June 30, 1971. Donald O. Kirkpatrick received a total of $8,059.01 from Quality during the first 75 days of Quality's fiscal year ended June 30, 1972. He received a total of $106,863.35 from Quality during the remainder of that fiscal year. A total of $7,108 was distributed by Quality for the benefit of Gina, Dona, Deborah, and Donald Kirkpatrick, Jr. during Quality's fiscal year ended June 30, 1972, ($1,777 was distributed for the benefit of each of the 4 children). None of these distributions was made during the first 75 days of Quality's fiscal year ended June 30, 1972. Donald O. Kirkpatrick received a total of $4,046.90 from Quality during the first 75 days of Quality's fiscal year ended June 30, 1973. He received a total of $212,070.44 in disbursements from Quality during the remainder of Quality's fiscal year ended June 30, 1973. A total of $10,598 was distributed by Quality for the benefit of Gina, Dona, Deborah, and Donald Kirkpatrick, Jr. during Quality's fiscal year ended June 30, 1973, ($2,649.50 was distributed *173 for the benefit of each of the 4 children). None of these distributions was made during the first 75 days of Quality's fiscal year ended June 30, 1973. Donald O. Kirkpatrick advanced a total of $130,000 in cash to Quality during the fiscal year ended June 30, 1973. No bank accounts were established for any of the Kirkpatrick children during either of the years in issue. ULTIMATE FINDINGS OF FACT 1. For the taxable year 1972 the ownership of 40 percent of the stock of Quality by the four Kirkpatrick children did not lack economic reality and, for tax purposes, each owned 10 percent of the common stock of Quality. 2. For the taxable year 1973 the ownership of 48 percent of the stock of Quality by the four Kirkpatrick children did not lack economic reality and, for tax purposes, each owned 12 percent of the common stock of Quality. OPINION We must decide in this case whether or not Donald Kirkpatrick's attempt to split income between members of his family should be recognized for income tax purposes.As a general rule, "[transactions] within a family group are subject to *174 special scrutiny in order to determine if they are in economic reality what they appear to be on their face." Gibbon v. Commissioner,19 T.C. 78, 84 (1952). "[If] a transaction between members of a family is not bona fide, its effectiveness as an income-splitting device will be frustrated." Duarte v. Commissioner,44 T.C. 193, 197 (1965). With regard to transfers of stock of subchapter S corporations, section 1.1373-1(a)(2), Income Tax Regs., provides: (2) * * * A donee or purchaser of stock in the corporation is not considered a shareholder unless such stock is acquired in a bona fide transaction and the donee or purchaser is the real owner of such stock. * * * Transactions between members of a family will be closely scrutinized. Petitioners contend that the four Kirkpatrick children were the titular and beneficial owners of stock in Quality during the years in issue. Minor children, they argue, are permitted to be shareholders in a subchapter S corporation under the Internal Revenue Code and the laws of Arkansas. They *175 further contend that the record herein establishes that the children were not deprived of the economic incidents of ownership in the stock of Quality. To the contrary, respondent maintains that the children should not be considered shareholders during the years 1972 and 1973 for purposes of determining to whom the income of the corporation is taxable. It should first be noted that the validity of a transaction under State law is not conclusive of its bona fides for the purpose of Federal taxation. Commissioner v. Tower,327 U.S. 280 (1946). The question presented here is whether or not all of Quality's taxable income for its fiscal years ended June 30, 1972, and 1973, respectively, is attributable to petitioners and should be included in their gross income for the calendar years 1972 and 1973. This, in turn, depends on whether the children's ownership of Quality stock during 1972 and 1973 lacked economic substance and was not bona fide. The issue of who is the owner of property for Federal income tax purposes is a question of fact to be determined from an examination *176 of all the facts and circumstances. Schoenberg v. Commissioner,302 F. 2d 416 (8th Cir. 1962); Snyder v. Commissioner,66 T.C. 785 (1976). In determining the identity of the party who should be considered the shareholder of the Quality corporate stock, we must look to beneficial ownership as opposed to mere legal title. Hook v. Commissioner,58 T.C. 267 (1972); Kean v. Commissioner,51 T.C. 337 (1968). The substance of the transaction, rather than its form, is determinative of tax consequences. Commissioner v. P. G. Lake, Inc.,356 U.S. 260 (1958); Commissioner v. Court Holding Co.,324 U.S. 331 (1945). On three prior occasions this Court has had opportunities to review situations somewhat similar to the instant case. In Duarte v. Commissioner,44 T.C. 193 (1965), Beirne v. Commissioner,52 T.C. 210 (1969) and Beirne v. Commissioner,61 T.C. 268 (1973), we were concerned with whether transfers of stock to minor children in a subchapter S corporation were bona fide and had economic reality. The taxpayer in Duarte v. Commissioner,supra, *177 was the sole shareholder of a corporation. He transferred a 25 percent stock interest to each of his two minor children, pursuant to the New York Uniform Gifts to Minors Act. The children's stock was held by the taxpayer's wife as custodian. A gift tax return was filed reporting the transfer, although no gift tax liability resulted. The corporation filed an election to be taxed as a small business corporation. In Duarte we found that the custodian, the taxpayer's wife, failed to exercise any influence in the operation of the corporation, that the children did not receive any of the money which the corporation reported as having been distributed to them during the taxable year at issue, that no bank account had been established for either child, and that the taxpayer could not explain what had happened to the children's share of the corporate income. Thus, we held that the purported transfers lacked economic reality and that the taxpayer was the true economic owner of all the stock of the corporation. In Beirne v. Commissioner,52 T.C. 210 (1969), (herein called "Beirne I,") Michael F. Beirne formed Kelly Supply company in 1960. The corporate stock of *178 Kelly Supply was initially issued as follows: Stockholder of Record
Shares
Michael F. Beirne
100
Michael F. Beirne,
custodian for Beverly Lorraine Beirne
300
Michael F. Beirne,
custodian for David Michael Berine
300
Michael F. Beirne,
custodian for Mark Joseph Beirne
300
In 1960, Kelly Supply elected to be taxed as a small business corporation. Corinne A. Beirne, taxpayer's wife, replaced Michael F. Beirne as custodian in 1961. On May 25, 1961, the Beirnes had a fourth child-- Paul. Subsequent thereto, the taxpayer caused Beverly, David, and Mark Beirne to each transfer 25% (75 shares) of their shares to Paul, so that each child would have 225 shares. From 1960 to 1965, Kelly Supply had $130,366.54 of distributable income. Even though they owned 90% of the stock, only $21,993.51 was distributed to the children, solely in order to defray their income tax liabilities. The taxpayer received over $72,000 in unsecured advances from Kelly Supply during the years 1960 through 1965. Bank accounts were maintained for his minor children, but there were never any substantial deposits made to those accounts. In Beirne I, we concluded that neither *179 the custodian nor the children exercised any influence in the operation of Kelly Supply. In addition, the taxpayer continued to exercise control over the stock of Kelly Supply, even after its purported transfer, by retention of the power to adjust stock ownership among his children. The taxpayer payer retained the bulk of the corporate income in the corporation and borrowed large portions of those funds on open account for personal use. Thus, we held that the taxpayer had retained the enjoyment of the economic benefits of ownership of Kelly Supply stock, and that the transfers were not bona fide because they lacked economic reality. Hence all the income of Kelly Supply was taxed to Michael F. Beirne. The years at issue in Beirne v. Commissioner,61 T.C. 268 (1973) (herein called "Beirne II") were 1965, 1966, and 1967. In Beirne II we followed our opinion in Beirne I finding that nothing basic had changed since the years at issue there. We did, however, enumerate the factors which we examined in reaching our conclusion in Beirne I that the gifts of Kelly Supply stock were not bona fide. We said (61 T.C. at 277): (1) Petitioner's *180 wife, as custodian of the interests of the children, never acted in such capacity; (2) Petitioner exercised complete dominion over the stock of Kelly Supply; (3) Petitioner retained the economic enjoyment of the benefits of ownership because only a small portion of the earnings of Kelly Supply were distributed to the children and because petitioner obtained the use of the undistributed earnings through large unsecured advances; and (4) Petitioner did not deal at arm's length with Kelly Supply either in obtaining the advances or paying them back. Petitioners contend that the facts in this case are distinguishable from those in Duarte,Beirne I, and Beirne II. Respondent, on the other hand, contends that this case is controlled by the other three cases and the economic reality is that the petitioners owned all of Quality's stock. We will examine the factors we considered in Beirne I and Beirne II and apply them to this case. (1) Did Carolyn Kirkpatrick, the designated custodian, act in that capacity? The record herein shows that Carolyn Kirkpatrick exercised considerable influence over the affairs of Quality Poultry and Egg Co., Inc. She was both *181 a director and secretary-treasurer of the corporation and wrote all of the corporate checks. She was aware of each withdrawal made by her husband and the purpose for it. In addition, she reviewed the children's tax returns before they were filed with the Internal Revenue Service. Carolyn Kirkpatrick also helped make decisions regarding the purchase of real estate for investment purposes. On several occasions she examined property with Donald Kirkpatrick before a final decision was made as to whether the purchase should be made. Decisions regarding withdrawals for real estate investments were made jointly by Carolyn and Donald Kirkpatrick. We are convinced on this record that Carolyn Kirkpatrick recognized, acknowledged and felt responsible for her duties and obligations as custodian. She took affirmative action with respect to transactions affecting her children's interests. In sum, she was an active custodian. (2) Did Donald Kirkpatrick exercise complete dominion over the stock of Quality Poultry & Egg Co., Inc.? The evidence in the instant case indicates that Donald Kirkpatrick never controlled the ownership of his children's stock once it had been transferred *182 to them in 1965. The situation here is clearly distinguishable from the situation in the Beirne cases.In both of those cases, Dr. Beirne, the owner of only 10 percent of the corporate stock of Kelly Supply, exercised complete dominion and control over the stock of Kelly Supply. There, Dr. Beirne initially transferred 300 shares of stock to each of his three children. Subsequently, when his son Paul was born, he caused each of his minor children to relinquish 25 percent (75 shares) of their stock in Kelly Supply. He thus retained the effective right to transfer ownership of stock in Kelly Supply whenever and to whomever he desired. By comparison, when Donald and Carolyn Kirkpatrick had a fourth child in 1968, they transferred stock which they owned to the newly born child. In accomplishing this transfer, they did not alter or dilute the proportionate ownership theretofore enjoyed by their other children. Donald Kirkpatrick did not exercise complete dominion and control over the corporate stock of Quality Poultry & Egg Co., Inc. (3) Did Donald Kirkpatrick retain the economic enjoyment of the benefits of ownership of Quality stock by failing to distribute earnings *183 of Quality to the children? Petitioners contend that distributions made to Donald Kirkpatrick during the years in issue, which were in excess of his pro rata share of the corporate income, represented loans made by the children to Donald Kirkpatrick. They assert that he fully intended to repay his children the principal amount of the loans, plus interest, and that the execution of the promissory notes in 1973 constituted an acknowledgment by him of the debt to his children. To the contrary, respondent maintains that the Kirkpatrick children were deprived of the economic incidents of ownership of Quality stock. As support for this contention, respondent points in particular to Donald Kirkpatrick's use of a large portion of the children's share of Quality's corporate earnings, the failure to establish any bank accounts for the children, and the lack of any promissory note to evidence Donald Kirkpatrick's indebtedness for the loans from his children in 1973. The facts here can be simply stated. Petitioners organized Quality Poultry and Egg Co., Inc. in 1965. Since 1965, the stock of Quality has been held by petitioners and members of their family. Stock issued to petitioners' *184 children is held by Carolyn Kirkpatrick as custodian for each child. At all times the petitioners have been stockholders of record of a majority of the outstanding shares of Quality stock. Federal income tax returns have been filed for the Kirkpatrick children for each of the years in issue. Quality had taxable income of $113,076.66 during the fiscal year ended June 30, 1972. Donald O. Kirkpatrick received a total of $114,922.36 from Quality during the fiscal year ended June 30, 1972. A total of $7,108 was distributed by Quality for the benefit of the Kirkpatrick children during that fiscal year. Quality had taxable income of $121,674.96 during the fiscal year ended June 30, 1973.Donald O. Kirkpatrick received a total of $216,117.34 from Quality during the fiscal year ended June 30, 1973. A total of $10,598 was distributed by Quality for the benefit of the Kirkpatrick children during that fiscal year. It is evident that Donald Kirkpatrick received cash distributions from Quality representing a part of the children's share of the undistributed income of Quality during its 1972 and 1973 fiscal years. Petitioners do not dispute this. However, the question we must resolve *185 is whether or not petitioners' children were deprived of the economic enjoyment of the benefits of owning the Quality stock issued to them. We do not believe they were. In these years the Kirkpatrick children were too young to have their pro rata shares of the corporate earnings actually distributed to them. Thus the fact that they did not actually receive any such distributions is not significant. Since no such distributions were made, however, other evidence is needed to show that petitioners did not deprive their children of the economic enjoyment of the benefits of ownership of Quality stock. The establishment of custodial savings accounts and/or the preparation of promissory notes evidencing a debt owed to the children constitutes evidence that the children's stock ownership is bona fide and that petitioners did not deprive them of their right to a proportionate share of the corporate earnings. Although no bank accounts were established for any of the Kirkpatrick children during the taxable years at issue, the absence of such accounts is not conclusive. The facts show that Donald Kirkpatrick needed large amounts of money in order to purchase real estate and construct a *186 building to house the principal offices, warehouse and plant facilities of Quality. He obtained such funds by borrowing money from his children. In view of his need for funds to finance the purchase of real estate and construction of corporate facilities, it seems reasonable to us that no bank accounts would be established since the corporate earnings were being retained for further expansion of the corporation. Consequently, the petitioners' failure to establish bank accounts for their children, while a factor to be considered, does not prove that the children were deprived of the economic enjoyment of the benefits of ownership of Quality stock. Promissory notes dated July 1, 1972, were executed for each child for the principal amount of his distributive share of the taxable income as computed by the corporation from June 1967 through June 1972, plus interest, less the taxes paid each year on behalf of the children as a result of their reporting their share of the taxable income of the corporation. The notes were made payable to Carolyn Kirkpatrick as custodian for each child. The promissory notes executed by Donald Kirkpatrick served to evidence and acknowledge the loans *187 from his children for the years 1967 to 1972. Thus, at least with respect to 1972, he recognized the debt to his children and evidenced his intention to repay that debt through the execution of the promissory notes. The lack of documentation with respect to 1973 must be considered. Donald Kirkpatrick acknowledges the fact that no notes were executed to evidence his indebtedness for the 1973 loans. However, he contends that a promissory note is merely one indication that indebtedness exists, and that the lack of a promissory note does not bar the existence of a debt.
We agree. We think Mr. Kirkpatrick clearly recognized the debt owed to his children and fully intended to repay that debt. While the execution of promissory notes for 1973 would have been a "formalistic nicety," the absence of such notes does not preclude the existence of a debt. We are persuaded that Donald Kirkpatrick intended to repay the loan from his children, and did not intend to deprive them of any rights they had to their proportionate share of the corporate income. In addition, we are persuaded that Carolyn Kirkpatrick, as custodian for the children, was fully aware of the amounts that Donald owed to *188 the children, and adequately protected their interests. All in all, it is our opinion that the Kirkpatrick children were not deprived of the economic enjoyment of the benefits of ownership of Quality stock. As minor children, they could not benefit from an actual distribution of corporate profits. Realizing this, Donald Kirkpatrick used the corporation's taxable income (including part of the children's pro rata share) to construct the corporation's new principal offices and other facilities, and to make certain real estate investments. Over the long run, this action benefited the children by increasing the overall worth of the corporation, since the children, as stockholders, share in the corporation's increased net worth and profits. Despite Mr. Kirkpatrick's failure to meet certain formalistic requirements, we think the children were not deprived of the economic enjoyment of the benefits of owning Quality corporate stock. (4) Did Donald Kirkpatrick deal at arm's length with Quality and his children in obtaining the loans and paying them back? The situation in the instant case is clearly distinguishable from Beirne I and Beirne II. In the Beirne cases, the *189 taxpayer was able to withdraw money freely from his children's share of Kelly Supply's taxable income without the need for approval or consent of another individual. His withdrawals were not represented by promissory notes and were not secured by collateral of any type. The unsecured advances were made without interest for several years. When interest was paid, the taxpayer never went "out of pocket" to pay it. In one instance he concurrently borrowed the same amount from the corporation that he supposedly paid in interest. He partially repaid the unsecured advances by tranferring notes of questionable value issued by another financially troubled, closely held corporation. Thus, in the Beirne cases, we concluded that the taxpayer had no genuine intention of repaying the advances he obtained from the corporation and that there was no genuine indebtedness between him and the Kelly Supply corporation. By contrast, Donald Kirkpatrick took steps to substantiate and secure the indebtedness between himself and his children. Promissory notes, secured by a pledge of his and his wife's stock in Quality, were executed in favor of the Kirkpatrick children for the years 1967 through *190 1972. In addition, he borrowed $23,227.44 from the Worthen Bank & Trust Company of Little Rock on August 27, 1974, in order to pay the children the interest on the notes. He paid the children the interest due on the notes by purchasing certificates of deposit in the name of Carolyn Kirkpatrick as custodian for each child. Each certificate was dated August 27, 1974. Unlike the situation in the Beirne cases, Donald Kirkpatrick has not repaid the loans with notes of questionable value. He took steps to substantiate and secure the indebtedness between himself and his children. Promissory notes were issued in favor of the children. Certificates of deposit were purchased to pay the children the interest due on the notes. To date, he has made payments of about $95,000 on the promissory notes. Therefore, we conclude that Donald Kirkpatrick dealt at arm's length with his children and Quality in obtaining the loans and in repaying them. After considering the above factors and in view of the facts and circumstances present in this case, we hold that the Kirkpatrick children's ownership of Quality stock during 1972 and 1973 was bona fide and had economic reality. The corporate *191 stock was issued to the children in 1965. Since 1965, Federal income tax returns have been filed for each child reflecting that child's share of Quality's taxable income for that fiscal year. Carolyn Kirkpatrick has served as an active custodian, who has protected the interests of the children. Donald Kirkpatrick has never attempted to control the ownership of the children's stock subsequent to its issuance. Their proportionate interests have not been diluted. The children have not been deprived of the economic enjoyment of the benefits of their ownership of Quality stock. Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩