155 T.C. No. 8

UNITED STATES TAX COURT

CLINTON DECKARD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11859-17.                    Filed September 17, 2020.

W was organized in 2012 as a Kentucky nonstock, nonprofit corporation. In 2014 W filed a retroactive election for S corporation status as of the date of its incorporation. P, who was W's president and one of its directors, then reported passthrough operating losses from W on his 2012 and 2013 individual income tax returns. R disallowed the passthrough losses.

<u>Held</u>: As an officer and director of W, subject to the constraints of Kentucky law and W's articles of incorporation, P held no ownership interest in W equivalent to that of a shareholder for purposes of applying subchapter S.

<u>Held</u>, <u>further</u>, P is not entitled to claim passthrough losses from W on his individual income tax returns.

Mark A. Loyd and Bailey Roese, for petitioner.

Diana N. Wells, for respondent.

OPINION

THORNTON, Judge:  In 2012 Waterfront Fashion Week, Inc. (Waterfront), was organized under Kentucky law as a nonstock, nonprofit corporation.  In 2014, in his capacity as Waterfront's president, petitioner filed with the Internal Revenue Service (IRS) Waterfront's election to be treated as an S corporation, effective retroactively to the date of its incorporation in 2012.  Petitioner later filed untimely individual income tax returns for his taxable years 2012 and 2013, claiming Waterfront's reported operating losses as offsets against his individual taxable income.  By notice of deficiency respondent disallowed these claimed passthrough losses.

Pending before us are respondent's motion for partial summary judgment and petitioner's cross-motion for partial summary judgment.[1]  These motions ask us to decide (1) whether Waterfront made a valid S corporation election and

_____

[1]After respondent filed his motion for partial summary judgment, the parties submitted multiple stipulations of settled issues.  Respondent represents that no issues for trial would remain should we grant his motion for partial summary judgment.

(2) whether petitioner was a shareholder of Waterfront for the taxable years 2012 and 2013.  Also pending before us is petitioner's second motion for partial summary judgment as to Waterfront's entitlement to certain deductions.  The parties agree that for petitioner to prevail on his second motion for partial summary judgment, he must first prevail on his cross-motion for partial summary judgment.

For the reasons explained below, we agree with respondent that petitioner was not a shareholder or beneficial owner of Waterfront for the taxable years 2012 and 2013 for purposes of subchapter S and so is not entitled to claim passthrough losses from Waterfront on his individual income tax returns.  Accordingly, we will grant respondent's motion for partial summary judgment and deny petitioner's motions for partial summary judgment.[2]

## Background

The following background information is based on the parties' motion papers, their stipulations of facts, and the attached exhibits.  When he timely petitioned this Court, petitioner resided in Kentucky.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Waterfront was organized on May 8, 2012, as a nonstock, nonprofit corporation under the Kentucky Nonprofit Corporation Acts (Act), Ky. Rev. Stat. Ann. secs. 273.161-273.390 (West 2012). The articles of incorporation, signed by D. Kevin Ryan as "Organizer" and filed with the Secretary of State of the Commonwealth of Kentucky (Kentucky secretary of state), state in part:

> The undersigned hereby forms a nonprofit corporation (the "Organization") pursuant to the provisions of Kentucky Nonprofit Corporation Act, KRS 273.161 to 273.390, and adopts the following as its articles of incorporation:

### Article I

> The name of the Organization shall be WATERFRONT FASHION WEEK, INC.

### Article II

> A.     This Organization shall be a nonprofit corporation organized for all lawful charitable purposes. The primary mission of the Organization is to raise money for the conservation and maintenance of the Waterfront Park located in Louisville, Kentucky, to provide economic development opportunities for various local, regional, and national fashion industry designers, to provide a platform for women to embrace their own personal styles and explore new style avenues, and to enhance the quality of life and the economic vitality, all in partnership with government and private business concerns.

B.    The Organization shall have all the powers of a nonstock, nonprofit corporation formed or existing under the provisions of KRS 273.161 through KRS 273.390 * * *

*         *         *         *         *         *         *

C.    The Organization is organized exclusively for charitable and educational purposes, including, for such purposes, the making of distributions to (i) organizations that qualify as exempt organizations under §501(c)(3) of the Internal Revenue Code of 1986, as amended from time-to-time (the "Code") * * *, or (ii) any other federal, state, or local government entity or enterprise established exclusively for a public purpose, including but not limited to the Waterfront Development Corporation.

D.    No part of the net earnings of the Organization shall inure to the benefit of, or be distributable to its directors, officers or other private persons, except that the Organization shall be authorized and empowered to pay reasonable compensation for services actually rendered and to make payments and distributions in furtherance of its exempt purposes * * *.  Notwithstanding any other provision of these Articles, the Organization shall not carry on any other activities not permitted to be carried on by (i) a corporation exempt from federal income tax under §501(c)(3) of the Code or (ii) a corporation, contributions to which are deductible under §170(c)(2) of the Code.

## Article III

The Organization shall have no members.

*         *         *         *         *         *         *

## Article VII

The names * * * of the three (3) individuals who shall serve as the initial directors of the Organization, until their successors are

elected or appointed, and qualified, as provided under the Bylaws[3] of the Organization, are the following:  Clinton D. Deckard * * *: Margaret H. Duffy * * *; and D. Joseph Hagerty * * *

  *          *          *          *          *          *          *

Article XII

The foregoing notwithstanding, the Organization may be dissolved by resolution approved by a two-thirds (2/3rds) majority of the directors in office as defined in the Organization's Bylaws.  Upon the dissolution of the Organization, its assets shall be distributed as directed by a two-thirds (2/3rds) majority vote of the directors in office for (i) one or more exempt purposes that are consistent with the exempt purposes of the Organization and within the meaning of §501(c)(3) of the Code or corresponding section of any future federal tax code, or (ii) any other federal, state, or local government entity or enterprise established exclusively for a public purpose.

At all relevant times, Waterfront existed under the provisions of the Act.  At all relevant times, petitioner was Waterfront's president and one of its three directors along with Margaret H. Duffy, who was its secretary and treasurer, and D. Joseph Hagerty.  Waterfront never applied for recognition of tax-exempt status with the IRS.

Waterfront produced an event called Waterfront Fashion Week that was held at the Louisville Waterfront Park from October 17 to 19, 2012.  This event was marketed as benefiting Waterfront Development Corp., a nonprofit

---

[3]Waterfront had no bylaws.

organization that maintains the Louisville Waterfront Park. The event failed, however, to break even. Consequently, Waterfront made no cash charitable contribution to Waterfront Development Corp. The record does not reflect that Waterfront engaged in any other activity at any relevant time.

On September 28, 2013, the Kentucky secretary of state administratively dissolved Waterfront for failure to file its 2013 annual report. On December 16, 2013, after filing a reinstatement application, Waterfront was reinstated as a corporation duly incorporated under Kentucky law. On September 30, 2014, the Kentucky secretary of state once again administratively dissolved Waterfront, this time for failure to file its 2014 annual report. This time Waterfront did not seek reinstatement.

On October 28, 2014, Waterfront mailed to the IRS Form 2553, Election by a Small Business Corporation. The Form 2553 indicated that Waterfront was electing to be an S corporation retroactively as of the date of its incorporation, May 8, 2012.[4] Petitioner signed the Form 2553 in his capacity as Waterfront's

_____

[4]A small business corporation generally may elect under sec. 1362(a) to be an S corporation for any taxable year at any time during the preceding taxable year or at any time during the taxable year and on or before the 15th day of the third month of the taxable year. See sec. 1362(b)(1). Rev. Proc. 2013-30, 2013-36 I.R.B. 173, enables a taxpayer to make a late, retroactive election so long as the election is properly completed within three years and 75 days after the effective

(continued...)

president.  Petitioner also signed the Form 2553 shareholder's consent statement, indicating that he held a 100% ownership interest acquired on May 8, 2012.

On January 13, 2015, Waterfront filed untimely Forms 1120S, U.S. Income Tax Return for an S Corporation, for its taxable years 2012 and 2013, reporting operating losses of $277,967 and $3,239 for 2012 and 2013, respectively. Attached to the Forms 1120S were Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc., reporting that petitioner had 100% stock ownership of Waterfront during 2012 and 2013.

On May 12, 2015, petitioner filed untimely Forms 1040, U.S. Individual Income Tax Return, for his taxable years 2012 and 2013.  On the Schedules E, Supplemental Income and Loss, attached to these returns, petitioner reported passthrough, nonpassive losses from Waterfront of $277,967 and $3,239 for taxable years 2012 and 2013, respectively.

By notice of deficiency respondent disallowed these reported passthrough losses from Waterfront on the ground that Waterfront had not made a valid S corporation election or, alternatively, that petitioner was not a shareholder or member of Waterfront for taxable years 2012 and 2013.

---

[4](...continued)
date.  Respondent has raised no issue about the timeliness of Waterfront's election.

## Discussion

## I. Summary Judgment Standards

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b). The moving party bears the burden of proving that there is no genuine dispute as to any material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

## II. S Corporations Generally

Subchapter S allows a qualified corporation, with the consent of all its shareholders, to be treated as a passthrough entity for purposes of Federal income tax. Secs. 1361-1366. Consequently, an S corporation, unlike a traditional C corporation, generally pays no Federal income tax.[5] Instead, a shareholder of an S corporation must report a pro rata share of the S corporation's taxable income,

---

[5]As exceptions to this general rule an S corporation may be taxable in certain circumstances on built-in gains and passive investment income, see secs. 1374 and 1375, and for recapture of certain inventory benefits and investment credits, see secs. 1363(d), 1371(d)(2).

losses, deductions, and credits.  Sec. 1366(a)(1)(A); sec. 1.1366-1(a), Income Tax Regs.; see Gitlitz v. Commissioner, 531 U.S. 206, 209 (2001); Maloof v. Commissioner, 456 F.3d 645, 647 (6th Cir. 2006), aff'g T.C. Memo. 2005-75.

III.  Shareholder of S Corporation

The critical question is whether petitioner should be considered a shareholder of Waterfront during the years at issue.  If he was not, then he was not entitled to claim passthrough losses from Waterfront on his individual income tax returns.

It is undisputed that petitioner was not a shareholder of record; Waterfront was not authorized to issue stock and in fact had no shares of stock.  Petitioner nevertheless urges that he should be considered Waterfront's sole shareholder because, he says, he held exclusive beneficial ownership of the corporation.

Petitioner's declaration in support of his cross-motion for partial summary judgment asserts, among other things:  that on or about July 22, 2011, he hired Extraordinary Events, an unrelated event-planning business, to coordinate Waterfront Fashion Week; that on May 3, 2012, he hired Attorney D. Kevin Ryan to advise him on the creation of a legal entity to conduct Waterfront Fashion Week because Extraordinary Events had advised petitioner that a tax-exempt entity would encourage sponsors to make tax-deductible contributions to the legal entity;

that Attorney Ryan never advised petitioner that sponsors might be able to deduct sponsorships as trade or business expenses even if the legal entity lacked tax-exempt status; that on May 8, 2012, Attorney Ryan formed Waterfront under the Act; that during 2012 and 2013 petitioner was president of Waterfront and its "sole decision maker"; that on or about August 10, 2012, he terminated the agreement with Extraordinary Events because it had failed to recruit enough sponsors or raise enough contributions to fund Waterfront Fashion Week; that he then assumed "complete control" over planning Waterfront Fashion Week, "abandoned plans" for Waterfront to obtain Federal tax-exempt status, and began treating Waterfront as a "for-profit business that I owned entirely"; and that in August 2012 he made over $275,000 of contributions to Waterfront representing over 85% of the total cost of Waterfront Fashion Week.

Respondent has not expressly disputed these asserted facts. For purposes of deciding respondent's motion for partial summary judgment, we assume that they are true. Nevertheless, for the reasons explained below we conclude that as a matter of law petitioner is not properly treated as Waterfront's shareholder for purposes of subchapter S.

The subchapter S regulations provide: "Ordinarily, the person who would have to include in gross income dividends distributed with respect to the stock of

the corporation (if the corporation were a C corporation) is considered to be the shareholder of the corporation." Sec. 1.1361-1(e)(1), Income Tax Regs. Citing this regulation, one court has observed that "the question whether a person was a shareholder on the date of the election to be taxed under Subchapter S is equivalent to the question whether, had there been a valid election, he would have been required to report as personal income profits earned by the corporation on that date." Cabintaxi Corp. v. Commissioner, 63 F.3d 614, 616 (7th Cir. 1995), aff'g in part, rev'g in part on other grounds T.C. Memo. 1994-316. The resolution of this question depends on whether the person "would have been deemed a beneficial owner of shares in the corporation, entitled therefore to demand from the nominal owner the dividends or any other distributions of earnings on those shares." Id.

The courts look to State law to determine whether a person is a beneficial owner of corporate shares:

> [A]lthough the meaning of "shareholder" for purposes of Subchapter S election has been said to be a matter of federal law rather than of state law, this means only that it is federal law which determines which kind of shareholder--namely, beneficial rather than record--is required to elect in order for the corporation to achieve Subchapter S status. Whether a particular investor was a shareholder of that kind-- in this case was a beneficial shareholder of * * * [the corporation] on the date of the election--is an issue of state law. [Citation omitted.]

Id. at 617 (citing United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985), Aquilino v. United States, 363 U.S. 509, 513 (1960), and United States v. Denlinger, 982 F.2d 233, 235 (7th Cir. 1992)); accord Pahl v. Commissioner, 150 F.3d 1124, 1129 (9th Cir. 1998), aff'g T.C. Memo. 1996-176; see Swenson v. Commissioner, 37 T.C. 124, 131 (1961) ("In determining when petitioner acquired the stock in question, we must look to the applicable State law."), rev'd on other grounds, 309 F.2d 672 (8th Cir. 1962).

Consistently with these precepts, in deciding whether a person is properly treated as an S corporation shareholder, courts have frequently considered whether the person is a beneficial owner of the corporation's stock. See, e.g., Pahl v. Commissioner, 150 F.3d 1124; Cabintaxi Corp. v. Commissioner, 63 F.3d 614; Wilson v. Commissioner, 560 F.2d 687 (5th Cir. 1977), aff'g T.C. Memo. 1975-92; Hook v. Commissioner, 58 T.C. 267 (1972); Beirne v. Commissioner, 52 T.C. 210 (1969); Hoffman v. Commissioner, 47 T.C. 218 (1966), aff'd per curiam, 391 F.2d 930 (5th Cir. 1968); Hightower v. Commissioner, T.C. Memo. 2005-274, aff'd, 266 F. App'x 646 (9th Cir. 2008). The parties have cited, and we have

discovered, no case addressing beneficial ownership in a nonstock, nonprofit corporation for purposes of subchapter S.[6]

Nonprofit corporations are not generally considered to have owners. See Farrow v. Saint Francis Med. Ctr., 407 S.W.3d 579, 593 (Mo. 2013) ("Non-profit corporations do not have owners. * * * [N]on-profit corporations do not have shareholders or any other way for third parties (whether individuals or entities) to assert * * * [an] 'ownership' role."); Philip T. Hackney, "What We Talk About When We Talk About Tax Exemption", 33 Va. Tax Rev. 115, 121 (2013) ("There are no 'owners' of a nonprofit organization; consequently we cannot use a pass-through taxation system like we do for partnerships where it is clear who owns the firm."); Joseph Mead & Michael Pollack, "Courts, Constituencies, and the Enforcement of Fiduciary Duties in the Nonprofit Sector", 77 U. Pitt. L. Rev. 281, 289 (2016) ("[N]onprofits do not have owners[.]").

---

[6]In rare circumstances, for purposes of determining whether purportedly nonprofit cemetery corporations qualified for tax exemption under sec. 501, courts have treated as equity interests certain profit-sharing arrangements with insiders. See Knollwood Mem'l Gardens v. Commissioner, 46 T.C. 764, 781 (1966) ("This arrangement embodies the very essence of an equity interest, 'a participation in the pot luck of the enterprise.'" (quoting Aqualane Shores, Inc. v. Commissioner, 269 F.2d 116, 119 (5th Cir. 1959), aff'g 30 T.C. 519 (1958)); Rose Hills Mem'l Park Ass'n v. United States, 463 F.2d 425, 430 (Ct. Cl. 1972). These cases, however, did not involve any issue of beneficial ownership for purposes of subchapter S.

The reason nonprofit corporations are not generally considered to have owners is that they are prohibited from distributing profits to insiders who are in positions to exercise control, such as members, officers, or directors:

> The leading theory of nonprofit enterprises holds that the rationale for use of the nonprofit form lies chiefly in the so-called "nondistribution constraint"--i.e., the fact that while ordinary business corporations have shareholders who are allowed to receive the residual earnings of the enterprise, the members of a nonprofit corporation are expressly prohibited from receiving any part of the assets or property of the corporation for themselves. See Hansmann, Reforming Nonprofit Corporation Law, 129 U.Pa.L.Rev. 497, 502-507, 557 (1981); Hansmann, The Role of Nonprofit Enterprise, 89 Yale L.J. 835, 843-845 (1980). * * *

Austin v. Mich. Chamber of Commerce, 494 U.S. 652, 675 n.6 (1990) (Brennan, J., concurring).

Consequently, there is no interest in a nonprofit corporation equivalent to that of a stockholder in a for-profit corporation who stands to profit from the success of the enterprise. See 1 William M. Fletcher, Cyclopedia of the Law of Corporations, sec. 68.05 (West 2020) ("One key distinction between nonprofit and for-profit corporations is that in a nonprofit corporation, shareholders or members do not have a proprietary interest in the corporation, as they do in a for-profit corporation."); Henry B. Hansmann, "The Role of Nonprofit Enterprise", 89 Yale L.J. 835, 838 (1980) ("Thus a nonprofit corporation is distinguished from a for-

profit (or 'business') corporation primarily by the absence of stock or other indicia of ownership that give their owners a simultaneous share in both profits and control.").

The prohibition on the distribution of profits is clearly embodied in the Act, which governs the formation, operation, and dissolution of nonstock, nonprofit corporations in Kentucky.[7]  A corporation subject to the provisions of the Act must possess two important characteristics.  First, the corporation must be "nonprofit".  Ky. Rev. Stat. Ann. sec. 273.161(1).  A "[n]onprofit corporation" is defined as a corporation no part of the income or profit of which is distributable to its members, directors, and officers.  Id. sec. 273.161(3).  Consistent with this definition, the Act expressly prohibits a nonprofit corporation from paying a dividend or distributing any part of its income or profits to its members, directors,

---

[7]The Act incorporates provisions of the Model Nonprofit Corporation Act. See Marilyn E. Phelan, 1 Nonprofit Organizations:  Law and Taxation 2d, sec. 1:30 (Westlaw 2020).

or officers.  Id. sec. 273.237.[8]  Second, the corporation "shall not have or issue shares of stock."  Id.[9]

As a Kentucky nonstock, nonprofit corporation subject to the provisions of the Act, Waterfront had no stock and could issue no stock.  Consequently, petitioner does not fall within the four corners of the regulation which "[o]rdinarily" treats as an S corporation shareholder "the person who would have to include in gross income dividends distributed with respect to the stock of the corporation (if the corporation were a C corporation)".  Sec. 1.1361-1(e)(1), Income Tax Regs. (emphasis added).

---

[8]As possible exceptions to this general rule, Ky. Rev. Stat. Ann. sec. 273.237 (West 2012) provides:

> A corporation may pay compensation in a reasonable amount to its members, directors, or officers for services rendered, may confer benefits upon its members in conformity with its purposes, and upon dissolution or final liquidation may make distributions to its members as permitted by KRS 273.161 to 273.390, and no such payment, benefit or distribution shall be deemed to be a dividend or a distribution of income or profit.

[9]Unsurprisingly in the light of these constraints, the Act contains no provision for a beneficial shareholder of a nonprofit corporation.  By contrast, Kentucky corporate law provides a definition for "beneficial shareholder" with respect to for-profit corporations:  "'Beneficial shareholder' means the person who is a beneficial owner of shares held in a voting trust or by a nominee as the record shareholder."  Ky. Rev. Stat. Ann. sec. 271B.13-010(6) (West 2020).

Furthermore, petitioner did not otherwise possess an ownership interest in Waterfront equivalent to that of a shareholder. Because he was president and a director of Waterfront, the Act, along with Waterfront's articles of incorporation, expressly prohibited any part of Waterfront's income or profit from being distributed to him or inuring to his benefit. See Ky. Rev. Stat. Ann. sec. 273.237.[10] In the light of this nondistribution constraint, treating petitioner as a shareholder of Waterfront would be fundamentally incompatible with the purpose and operation of subchapter S, which generally taxes an S corporation's income currently at the shareholder level.

Furthermore, petitioner lacked dissolution rights in Waterfront typical of a shareholder. None of Waterfront's assets could be distributed to him upon

---

[10]Petitioner asserts that the Act provides an exception to the general rule against private inurement, in that a nonprofit corporation may "confer benefits upon its members in conformity with its purposes". Ky. Rev. Stat. Ann. sec. 273.237. Consequently, petitioner posits: "When a nonprofit corporation can distribute the profits of a business to its members that hold certificates of membership, there is no significant difference between a Kentucky nonprofit corporation and a 'standard' corporation." The short answer is that Waterfront had no members. The Act defines "Member" as "one having membership rights in a corporation in accordance with the provisions of its articles of incorporation or bylaws". Ky. Rev. Stat. Ann. sec. 273.161(6) (West 2012). Waterfront's articles of incorporation expressly provide: "The Organization shall have no members." We reject without further discussion the notion that there is no significant difference under Kentucky law between a nonprofit corporation and other corporations.

Waterfront's dissolution.  <u>See</u> Ky. Rev. Stat. Ann. sec. 273.303.[11]  Consistent with

the constraints of the Act, Waterfront's articles of incorporation provide that, upon

---

[11]Ky. Rev. Stat. Ann. sec. 273.303 (West 2012) provides:

The assets of a corporation in the process of dissolution shall be applied and distributed as follows:

(1) All liabilities and obligations of the corporation shall be paid and discharged, or adequate provisions shall be made therefor;

(2) Assets held by the corporation upon condition requiring return, transfer or conveyance, which condition occurs by reason of the dissolution, shall be returned, transferred or conveyed in accordance with such requirements;

(3) Assets received and held by the corporation subject to limitations permitting their use only for charitable, religious, eleemosynary, benevolent, educational or similar purposes, but not held upon a condition requiring return, transfer or conveyance by reason of the dissolution, shall be transferred or conveyed to one or more domestic or foreign nonprofit corporations, societies, or organizations engaged in activities substantially similar to those of the dissolving corporation, pursuant to a plan of distribution adopted as provided in KRS 273.161 to 273.390;

(4) Other assets, if any, shall be distributed in accordance with the provisions of the articles of incorporation or the bylaws to the extent that the articles of incorporation or bylaws determine the distributive rights of members, or any class or classes of members, or provide for distribution to others;

(5) Any remaining assets may be distributed to such nonprofit societies, organizations or domestic or foreign corporations, as may be specified in a plan of distribution adopted as provided in KRS 273.161 to 273.390.

its dissolution, its assets shall be distributed for exempt purposes within the meaning of section 501(c)(3) or shall be distributed to an entity established for public purposes.

Petitioner asserts that in August 2012 he "assumed complete control over the planning of the fashion week event" and began "treating * * * [it] as a for-profit business". Even assuming that this is true, any such actions would not give rise to ownership rights in Waterfront greater than those afforded by the Act and Waterfront's articles of incorporation. Control over Waterfront was vested in its three directors, as fiduciaries entrusted with the duties and powers imposed upon them by the Act and the articles of incorporation. See Ky. Rev. Stat. Ann. sec. 273.215(1); Ballard v. 1400 Willow Council of Co-Owners, Inc., 430 S.W.3d 229, 241 (Ky. 2013).

In the light of these various considerations, we conclude that petitioner, as an officer and director of Waterfront, subject to the constraints of the Act and Waterfront's articles of incorporation, lacked ownership rights in Waterfront equivalent to those of a shareholder for purposes of applying subchapter S.

IV. Petitioner's Substance Over Form Argument

Invoking the doctrine of substance over form, petitioner urges that we should disregard Waterfront's form as a nonprofit corporation and instead should

regard it, in substance, as a for-profit entity. He asserts that he intended Waterfront to be a for-profit entity and "objectively operated" it "consistently with it being a for-profit entity that he owned entirely." He urges that "the only fact inconsistent with Waterfront * * * being a for-profit entity is that an attorney formed * * * [it] as a nonprofit corporation prior to when the economic realities of the project came to light." He states that although he "should have sought to change Waterfront['s] * * * corporate documents to reflect" these changed plans, he was "mistakenly unaware of these formalities of corporate law" and so treated Waterfront "like he was the sole owner in every practical sense."

Taxpayers are generally bound by the form of the transaction they choose. As the Supreme Court has stated: "[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not." Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974); see Maloof v. Commissioner, 456 F.3d at 651 ("[A]s a general rule, courts will deem the form of a transaction to reflect its substance."); Television Indus., Inc. v. Commissioner, 284 F.2d 322, 325 (2d Cir. 1960) ("It would be quite intolerable to pyramid the existing complexities of tax law by a rule that the tax shall be that resulting from

the form of transaction taxpayers have chosen or from any other form they might have chosen, whichever is less."), aff'g 32 T.C. 1297 (1959).

Nothing in the record suggests that Waterfront's form did not respect its substance. To the contrary, the record shows that in May 2012 Waterfront was purposefully organized as a nonprofit corporation, upon an attorney's advice, with the expectation that it would seek tax-exempt status so as to facilitate tax-deductible gifts. Its corporate existence as a nonprofit corporation began when its articles of incorporation were filed on May 8, 2012. See Ky. Rev. Stat. Ann. sec. 273.2531. It was not until several months later that petitioner changed course, abandoned plans to obtain Federal tax-exempt status for Waterfront, and "assumed control". Any such actions after Waterfront's organization had no effect upon its status as a nonprofit corporation under the Act. Indeed, the parties have stipulated that at all relevant times Waterfront existed under the provisions of the Act.

V. Lack of Tax-Exempt Status

Petitioner suggests that because Waterfront never gained tax-exempt status (which it never sought), it should be regarded as a for-profit corporation. He reasons:

> Corporations that do not have exempt status are deemed to be for-profit entities. For-profit entities have shareholders. A nonprofit corporation that lost its exempt status is no different than a nonprofit

corporation that never applied for or obtained exempt status. Consequently, because Waterfront Fashion Week was not an exempt organization, its shareholders must be identified, regardless of whether the corporation was profitable. [Fn. ref. omitted.]

Petitioner's argument confuses Federal tax-exempt status with status as a nonprofit corporation under State law. As noted, at all relevant times Waterfront was subject to the provisions of the Act. The decision not to seek Federal tax-exempt status for Waterfront has no bearing on its status as a nonprofit corporation under the Act or on the ownership constraints imposed thereunder.

VI. Conclusion

We conclude that there is no genuine dispute of material fact requiring a trial and that respondent is entitled to judgment as a matter of law that petitioner was not a shareholder of Waterfront during the years at issue. Consequently, we need not address respondent's alternative argument that Waterfront failed to make a valid S corporation election for the years at issue.[12]

---

[12]In the light of our holding that petitioner was not a shareholder of Waterfront during the years at issue, the question arises whether we would have jurisdiction in this proceeding to determine whether Waterfront made a valid S corporation election. The parties have not addressed this jurisdictional issue. In various deficiency cases, where the notice of deficiency issued to an S corporation shareholder included S corporation adjustments, this Court has held that it has jurisdiction to redetermine those adjustments as part of the shareholder-level proceeding. See Winter v. Commissioner, 135 T.C. 238 (2010); Tabe v. Commissioner, T.C. Memo. 2019-149; Ferguson v. Commissioner, T.C. Memo.

(continued...)

To reflect the foregoing,

An appropriate order and decision

will be entered.

---

[12](...continued)
2019-40; McNely v. Commissioner, T.C. Memo. 2019-39; Berry v. Commissioner, T.C. Memo. 2018-143; Powell v. Commissioner, T.C. Memo. 2016-111, aff'd, 689 F. App'x 763 (4th Cir. 2017); Alli v. Commissioner, T.C. Memo. 2014-15.  None of these cases involved a deficiency proceeding--like the one presently before us-- brought by an individual who was not a shareholder of the putative S corporation. Our disposition of the instant case makes it unnecessary for us to consider further this potential jurisdictional issue.